ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
SEAN S. WIKNER (CSB No. 268319)
swikner@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

Attorneys for Defendant and Counter-Claimant
FITBIT, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FITBUG LIMITED,  a United Kingdom Limited Liability Company,<br><br>             Plaintiff,<br><br>v.<br><br>FITBIT, INC., a Delaware Corporation,<br><br>             Defendant.<br>_____<br>FITBIT, INC., a Delaware Corporation,<br><br>             Counter-Claimant,<br><br>v.<br><br>FITBUG LIMITED,  a United Kingdom Limited Liability Company,<br><br>             Counter-Defendant. | Case No.: 13-cv-01418-SC<br><br>**DEFENDANT FITBIT, INC.'S COUNTERCLAIMS AND FIRST AMENDED ANSWER TO COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Defendant Fitbit, Inc. hereby counterclaims against Plaintiff Fitbug Limited and provides its First Amended Answer to the Complaint (Dkt. No. 1) as follows:

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

For its counterclaims, Fitbit alleges as follows:

## PARTIES

1.     Fitbit, Inc. is a Delaware corporation with its principal place of business at 150 Spear St., San Francisco, CA 94105.

2.     Fitbug Limited is a United Kingdom limited liability company with its principle place of business at 1st Floor, Waterside House, 47-49 Kentish Town Road, Camden, London, United Kingdom.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

4.     This Court has personal jurisdiction over Fitbug because, among other things, Fitbug is transacting and doing business and has filed the present action in this judicial district.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

6.     By virtue of the allegations in the Fitbug Complaint, an actual controversy exists between the parties as to whether Fitbit's use of the FITBIT mark infringes any of the trademark rights Fitbug identified in the Complaint.

## FACTUAL BACKGROUND

### Growth of the FITBIT Mark and Use in Commerce

7.     Eric Friedman and James Park founded Fitbit in March 2007.

8.     Fitbit announced its launch at Techcrunch 50 on September 9, 2008 and debuted the original Fitbit fitness tracker, which incorporated a pedometer and diet monitoring system, and wirelessly transmitted collected data.

9.     Following its launch, Fitbit gained immediate recognition from technology enthusiasts.  Techcrunch named Fitbit one of five runners up at Techcrunch 50.  CNET similarly named Fitbit's original fitness tracker one of the top ten products from more than 120 companies that presented Techcrunch50 and a similar start-up conference, DemoFall.

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.     As of September 2008, consumers could preorder a FITBIT brand device from Fitbit's website.

11.     FITBIT first delivered its products to consumers in September 2009.

12.     Since September 2009, Fitbit has launched a variety of different FITBIT products and services, including Fitbit Ultra, Fitbit One, Fitbit Zip, Fitbit Flex, Fitbit Aria and various associated mobile applications and online resources.

13.     FITBIT products and services have a reputation for high quality in the United States.

14.     FITBIT products and services have a reputation for being innovative in the United States.

15.     FITBIT products and services have a reputation for being reliable in the United States.

16.     FITBIT products and services are available for purchase by consumers throughout the United States.

17.     FITBIT products and services are available for purchase by consumers in many different countries around the world.

18.     FITBIT sells the majority of its products and services directly to consumers.

19.     FITBIT products and services are widely recognized by consumers for their quality.

20.     Fitbit owns U.S. Registration No. 3,732,334 (issued December 29, 2009) for the trademark FITBIT for following goods and services:  (a)  Multifunctional electronic devices for displaying, measuring, and uploading to the Internet information including time, date, body and heart rates, global positioning, direction, distance, altitude, speed, steps taken, calories burned, navigational information, weather information, the temperature, wind speed, and the declination of body and heart rates, altitude and speed in Class 9; (b) Providing online chat rooms and electronic bulletin boards for registered users for transmission of messages concerning food, nutrition, personal activities, general interest, classifieds, virtual community, and social networking in Class 38; (c) Providing a website featuring information regarding fitness training in

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Class 41; and (d) Providing a website featuring information regarding nutrition, dieting, wellness, and health in Class 44 (the "FITBIT Registration"). Fitbit filed the underlying Application Serial No. 77/549355 on August 18, 2008. Fitbit first used the mark in commerce in the United States on goods and services in Classes 38, 41 and 44 at least as early as September 25, 2009 and on goods and services in Class 9 at least as early as September 29, 2009. **Exhibit 1** to this counterclaim is a USPTO record of U.S. Registration No. 3,732,334.

21.     The FITBIT mark is inherently distinctive.

22.     The FITBIT mark has attained secondary meaning.

**Non-Distinctiveness of the Fitbug Mark**

23.     Fitbit believes and therefore alleges that Fitbug identifies its product as a "bug" that assists users in becoming or remaining fit.

24.     Fitbug has used its own claimed FITBUG mark as a generic term.

25.     Fitbug describes its products generically as "bugs" in the Complaint in this case.

26.     Fitbit believes and therefore alleges that Fitbug otherwise publicly refers to its pedometers and other portable fitness devices as "bugs." **Exhibit 2** to this counterclaim are screenshots of Fitbug's use of the term "bug" on its website, in a press release and in connection with the sale of its portable fitness devices.

27.     "Bug" signifies an electronic device used to record data about, or monitor, a person and transmit information about that person to others.

28.     Fitbug's "bugs" monitor information about their users' physical activity and transmit that information to a computer, mobile device or online account where the user or anyone with access to the user's account can view the information.

29.     For example, Fitbug claims that the Fitbug Orb can monitor movements and sleep patterns and transmit this information wirelessly to a mobile device such as an iPhone 4S, iPhone 5 or iPad.

30.     The "bug" ending is not a distinctive element of the FITBUG mark.

31.     Fitbug promotes its FITBUG products to aid their users in being fit.

32.     The term "fit" is not a distinctive element of the FITBUG mark.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

33. Fitbug does not have the exclusive right to use the prefix FIT for fitness related products and services, including fitness equipment and online fitness resources.

34. "Fitbug" is not inherently distinctive with respect to Fitbug's products.

35. "Fitbug" has not obtained secondary meaning with respect to Fitbug's products.

### Fitbug's Business and Channels of Trade

36. Fitbug sells FITBUG branded pedometers.

37. Fitbug claims to provide various Internet based services, as it described in Paragraph 7 of the Complaint.

38. Fitbit believes and therefore alleges that Fitbug launched www.fitbug.com in the US in 2009.

39. Fitbit believes and therefore alleges that before 2009 Fitbug did not sell any FITBUG goods or services in the United States in the ordinary course of business.

40. Fitbit believes and therefore alleges that before 2009 Fitbug did not offer to sell any FITBUG goods or services in the United States in the ordinary course of business.

41. Fitbit believes and therefore alleges that before 2009 Fitbug did not transport or distribute any FITBUG goods or services in interstate commerce in the ordinary course of business in the United States.

42. Fitbit believes and therefore alleges that Fitbug's direct-sales to consumers are a small proportion of its business.

43. Fitbit believes and therefore alleges that in 2007 Fitbug emphasized distribution of its goods and services through corporate employee wellness programs.

44. Fitbit believes and therefore alleges that in 2007 Fitbug emphasized distribution of its goods and services through partnerships with medical insurance providers.

45. Fitbit believes and therefore alleges that in 2008 Fitbug emphasized distribution of its goods and services through corporate employee wellness programs.

46. Fitbit believes and therefore alleges that in 2008 Fitbug emphasized distribution of its goods and services through partnerships with medical insurance providers.

/ / /

47.     Fitbit believes and therefore alleges that in 2009 Fitbug emphasized distribution of its goods and services through corporate employee wellness programs.

48.     Fitbit believes and therefore alleges that in 2009 Fitbug emphasized distribution of its goods and services through partnerships with medical insurance providers.

49.     Fitbit believes and therefore alleges that in 2010 Fitbug emphasized distribution of its goods and services through corporate employee wellness programs.

50.     Fitbit believes and therefore alleges that in 2010 Fitbug emphasized distribution of its goods and services through partnerships with medical insurance providers.

51.     Fitbit believes and therefore alleges that in 2011 Fitbug emphasized distribution of its goods and services through corporate employee wellness programs.

52.     Fitbit believes and therefore alleges that in 2011 Fitbug emphasized distribution of its goods and services through partnerships with medical insurance providers.

53.     Fitbit believes and therefore alleges that in 2012 Fitbug emphasized distribution of its goods and services through corporate employee wellness programs.

54.     Fitbit believes and therefore alleges that in 2012 Fitbug emphasized distribution of its goods and services through partnerships with medical insurance providers.

55.     Fitbit believes and therefore alleges that in 2013 Fitbug emphasized distribution of its goods and services through corporate employee wellness programs.

56.     Fitbit believes and therefore alleges that in 2013 Fitbug emphasized distribution of its goods and services through partnerships with medical insurance providers.

57.     Fitbit believes and therefore alleges that Fitbug distributes the majority of its FITBUG products and services through partnerships with corporate employee wellness programs and medical insurance providers.

58.     Fitbit believes and therefore alleges that in 2007 Fitbug required consumers to purchase either a three-month or twelve-month subscription to Fitbug.com when they purchased a FITBUG pedometer.

///

///

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

59. Fitbit believes and therefore alleges that in 2008 Fitbug required consumers to purchase either three-month or twelve-month subscriptions to Fitbug.com when they purchased a FITBUG pedometer.

60. Fitbit believes and therefore alleges that in 2009 Fitbug required consumers to purchase either three-month or twelve-month subscriptions to Fitbug.com when they purchased a FITBUG pedometer.

61. Fitbit believes and therefore alleges that in 2010 Fitbug required consumers to purchase either three-month or twelve-month subscriptions to Fitbug.com when they purchased a FITBUG pedometer.

62. Fitbit believes and therefore alleges that in 2011 Fitbug required consumers to purchase either three-month or twelve-month subscriptions to Fitbug.com when they purchased a FITBUG pedometer.

63. Fitbit believes and therefore alleges that in 2012 Fitbug required consumers to purchase either three-month or twelve-month subscriptions to Fitbug.com when they purchased a FITBUG pedometer.

64. Fitbit believes and therefore alleges that in 2013 Fitbug required consumers to purchase either three-month or twelve-month subscriptions to Fitbug.com when they purchased a FITBUG pedometer.

65. Fitbit believes and therefore alleges that in 2007 Fitbug's Internet based services, as described in Paragraph 7 of the Complaint, were available to only paid subscribers.

66. Fitbit believes and therefore alleges that in 2008 Fitbug's Internet based services, as described in Paragraph 7 of the Complaint, were available to only paid subscribers.

67. Fitbit believes and therefore alleges that in 2009 Fitbug's Internet based services, as described in Paragraph 7 of the Complaint, were available to only paid subscribers.

68. Fitbit believes and therefore alleges that in 2010 Fitbug's Internet based services, as described in Paragraph 7 of the Complaint, were available to only paid subscribers.

69. Fitbit believes and therefore alleges that in 2011 Fitbug's Internet based services, as described in Paragraph 7 of the Complaint, were available to only paid subscribers.

70. Fitbit believes and therefore alleges that in 2012 Fitbug's Internet based services, as described in Paragraph 7 of the Complaint, were available to only paid subscribers.

71. Fitbit believes and therefore alleges that in 2013 Fitbug's Internet based services, as Fitbug described them in Paragraph 7 of the Complaint, were available to only paid subscribers.

### Dissimilarity of the Parties' Marks

72. Since Fitbit's launch on September 9, 2008, it has displayed the FITBIT design in connection with its goods and services (the "Original Fitbit Design" or ).

73. The Original Fitbit Design featured a stylized diamond consisting of thirteen light blue and white circles that form an arrow within the diamond (the "Diamond-Arrow Design"). This Diamond-Arrow Design sits to the left of the FITBIT mark, which is in a lower-case font in white lettering. The "I"s in the FITBIT mark are dotted in light blue. Both the Diamond-Arrow Design and the FITBIT mark sit on a black background.

74. Beginning in late 2009, Fitbit changed the background color of its website and accordingly made the lighter colored elements of the FITBIT design a darker color (the "Current Fitbit Design" or ).

75. The Current Fitbit Design is identical to the Original Fitbit Design, except that it is on a white background with darker letters. Both the arrow portion of the Diamond-Arrow Design and the FITBIT are in dark grey or black.

76. By contrast, Fitbit believes and therefore alleges that the Fitbug mark used between 2005 and 2012 (the "Original Fitbug Design" or ) incorporated a purple, highly stylized font that exaggerated portions of the "F", "T" and "G." Moreover, top of the letter "F" connected with and crossed the "T." The phrase "movementmotivation" appeared either next to or below the FITBUG Mark in the Original Fitbug Design with the word "movement" appearing in purple and "motivation" in light blue. Some variations on the Original Fitbug Design used the wordmark "Fitbug.com" () or combined the "Fitbug" wordmark with a cartoon bug running ().

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

77. The new design that Fitbit adopted in 2012 (the "Current Fitbug Design" or ) is easily distinguishable from the Current Fitbit Design as it removes the "I" dotted in light blue and replaces it with a stylized pink "I." Fitbug again displays the FITBUG Mark in stylized lettering, but this time in a darker shade of purple with portions of the "F" and "T" removed.

78. Fitbit believes and therefore alleges that Fitbug adopted a design that was more similar to the Current Fitbit Design when it selected the Current Fitbug Design.

79. Fitbit believes and therefore alleges that Fitbug made this selection to increase the purported similarities in the parties' marks as it prepared to file the present lawsuit.

80. Three variations on the Original Fitbug Design and the Current Fitbug Design are shown below alongside the Original Fitbit Design and the Current Fitbit Design:











81. Similarly, Fitbit's website at www.fitbit.com (the "Fitbit Website") also reduces the likelihood of confusion because it is distinctively different in design and content from Fitbug's website at www.fitbug.com.

**Fitbug's Unreasonable Delay in Connection with This Case**

82. On September 11, 2008, Dennis Skigen sent an email to jobs@fitbit.com.

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

83.     In that email Mr. Skigen referred to himself as "CMO" – chief marketing officer – of Fitbug.  Fitbit believes and therefore alleges that Dennis Skigen was Chief Marketing Officer at Fitbug USA in 2008.

84.     The subject line of Mr. Skigen's September 11, 2008 email was "Fitbug --- Collaborative discussion?"

85.     Mr. Skigen addressed his September 11, 2008 email to "Eric and James."

86.     Mr. Skigen's September 11, 2008 email asked to speak the same day.

87.     Fitbit believes and therefore alleges that "Eric and James" in Mr. Skigen's email referred to Fitbit's founders, Eric Friedman and James Park.

88.     Fitbit did not respond to Mr. Skigen's September 11, 2008 email.

89.     Fitbit believes and therefore alleges that Dennis Skigen was Chief Marketing Officer at Fitbug USA in 2009.

90.     Fitbit believes and therefore alleges that Dennis Skigen was Chief Marketing Officer at Fitbug USA in 2010.

91.     Fitbit believes and therefore alleges that Dennis Skigen was Chief Marketing Officer at Fitbug USA in 2011.

92.     Fitbit believes and therefore alleges that Dennis Skigen was Chief Marketing Officer at Fitbug USA in 2012.

93.     Fitbit believes and therefore alleges that Dennis Skigen was Chief Marketing Officer at Fitbug USA in 2013.

94.     Fitbit believes and therefore alleges that after Fitbug filed the Complaint in this action, Dennis Skigen changed his title on his LinkedIn profile to Business Development Consultant.

95.     Fitbit believes and therefore alleges that Dennis Skigen was an employee of Fitbug in 2008.

96.     Fitbit believes and therefore alleges that Dennis Skigen was an employee of Fitbug in 2009.

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

97.     Fitbit believes and therefore alleges that Dennis Skigen was an employee of Fitbug in 2010.

98.     Fitbit believes and therefore alleges that Dennis Skigen was an employee of Fitbug in 2011.

99.     Fitbit believes and therefore alleges that Dennis Skigen was an employee of Fitbug in 2012.

100.    Fitbit believes and therefore alleges that Dennis Skigen was an employee of Fitbug in 2013.

101.    Fitbit believes and therefore alleges that Dennis Skigen is currently an employee of Fitbug.

102.    Fitbit believes and therefore alleges that Fitbug authorized Dennis Skigen to act on its behalf in September 2008.

103.    Fitbit believes and therefore alleges that Fitbug authorized Dennis Skigen to speak on its behalf in September 2008.

104.    Fitbit believes and therefore alleges that Dennis Skigen intended to discuss a partnership with Fitbit.

105.    Fitbit believes and therefore alleges that Dennis Skigen intended to discuss a business relationship with Fitbit.

106.    Fitbit believes and therefore alleges that Fitbug was aware of Fitbit in 2007.

107.    Fitbit believes and therefore alleges that Fitbug was aware of Fitbit in 2008.

108.    Fitbit believes and therefore alleges that Fitbug was aware of Fitbit in 2009.

109.    Fitbit believes and therefore alleges that Fitbug was aware of Fitbit in 2010.

110.    Fitbit believes and therefore alleges that Fitbug was aware of Fitbit in 2011.

111.    Fitbit believes and therefore alleges that Fitbug was aware of Fitbit in 2012.

112.    Fitbit believes and therefore alleges that Fitbug was aware of Fitbit in 2013.

113.    Fitbit believes and therefore alleges that Fitbug was aware in 2007 that Fitbit intended to use the FITBIT mark on personal fitness related goods and services.

/ / /

114.    Fitbit believes and therefore alleges that Fitbug was aware in 2008 that Fitbit intended to use the FITBIT mark on personal fitness related goods and services.

115.    Fitbit believes and therefore alleges that Fitbug was aware as of September 11, 2008 that Fitbit intended to use the FITBIT mark on personal fitness related goods and services.

116.    Fitbit believes and therefore alleges that Fitbug was aware in 2008 that Fitbit used the FITBIT mark on personal fitness related goods and services.

117.    Fitbit believes and therefore alleges that Fitbug was aware in 2009 that Fitbit used the FITBIT mark on personal fitness related goods and services.

118.    Fitbit believes and therefore alleges that Fitbug was aware in 2010 that Fitbit used the FITBIT mark on personal fitness related goods and services.

119.    Fitbit believes and therefore alleges that Fitbug was aware in 2011 that Fitbit used the FITBIT mark on personal fitness related goods and services.

120.    Fitbit believes and therefore alleges that Fitbug was aware in 2012 that Fitbit used the FITBIT mark on personal fitness related goods and services.

121.    Fitbit believes and therefore alleges that Fitbug was aware in 2013 that Fitbit used the FITBIT mark on personal fitness related goods and services.

122.    Fitbit believes and therefore alleges that Fitbug was aware that Fitbit was taking preorders of FITBIT products and services in September 2008.

123.    Fitbit believes and therefore alleges that Fitbug was aware that Fitbit was taking preorders of FITBIT products and services in 2008.

124.    Fitbit believes and therefore alleges that Fitbug was aware that Fitbit was taking preorders of FITBIT products and services in 2009.

125.    Fitbit believes and therefore alleges that in September 2009 Fitbug knew that Fitbit shipped FITBIT products and services to customers.

126.    Fitbit believes and therefore alleges that in 2009 Fitbug knew that Fitbit sold FITBIT products and services to customers.

127.    Fitbit believes and therefore alleges that in 2010 Fitbug knew that Fitbit sold FITBIT products and services to customers.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

128. Fitbit believes and therefore alleges that in 2011 Fitbug knew that Fitbit sold FITBIT products and services to customers.

129. Fitbit believes and therefore alleges that in 2012 Fitbug knew that Fitbit sold FITBIT products and services to customers.

130. Fitbit believes and therefore alleges that in 2013 Fitbug knew that Fitbit sold FITBIT products and services to customers.

131. Fitbit believes and therefore alleges that Fitbug was aware of Application Serial No. 77/549355 before it matured to registration as U.S. Registration No. 3,732,334.

132. Fitbug did not oppose Application Serial No. 77/549355.

133. Fitbug did not otherwise contest Fitbit's used of the FITBIT mark until December 9, 2011 when Fitbug's counsel sent a demand to Fitbit.

134. The demand alleged among other things that the FITBIT mark infringed U.S. Registration Nos. 3,178,665 and 3,716,942 (the "FITBUG Mark").

135. Fitbug filed this lawsuit on March 29, 2013—over four and a half years after Mr. Skigen first contacted Fitbit.

136. Fitbug delayed the filing of this lawsuit.

137. Fitbug deliberately delayed the filing of this lawsuit.

138. Fitbug intended to wait to study Fitbit's business success before filing this lawsuit.

139. Fitbug's delays have prejudiced Fitbit.

140. Fitbug intends to profit from Fitbit's success by pursuing this litigation.

## FIRST COUNTERCLAIM FOR RELIEF

### (Declaratory Judgment of Non-Infringing Use)

141. Fitbit incorporates by reference the preceding paragraphs of this counterclaim.

142. By virtue of Fitbug's assertion in this action that Fitbit infringes its rights in the FITBUG Mark, there is an actual controversy between the parties that warrants declaratory relief.

143. Fitbit's current use of the FITBIT mark in the United States does not infringe and has not infringed any of the trademarks Fitbug identified in the Complaint.

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

144.    Fitbit's current use of the FITBIT mark in the United States is not likely to cause confusion in light of Fitbug's alleged FITBUG Mark.

145.    Fitbit's current use of the FITBIT mark in the United States is not likely to cause reverse confusion in light of Fitbug's alleged FITBUG Mark.

146.    Use of the FITBIT trademark on any goods and services identified in U.S. Registration No. 3,732,334 is not likely to cause confusion in light of any of the trademarks Fitbug identified in the Complaint.

147.    Use of the FITBIT trademark on any goods and services identified in U.S. Registration No. 3,732,334 does not cause confusion in light of any of the trademarks Fitbug identified in the Complaint.

148.    Use of the FITBIT trademark on any goods and services identified in U.S. Registration No. 3,732,334 does not cause reverse confusion in light of any of the trademarks Fitbug identified in the Complaint.

149.    Use of the FITBIT trademark on any goods and services identified in U.S. Registration No. 3,732,334 does not infringe any of the trademarks Fitbug identified in the Complaint.

150.    Use of the FITBIT trademark is not likely to cause confusion in light of any of the trademarks Fitbug identifies in the Complaint.

151.    Use of the FITBIT trademark does not cause confusion in light of any of the trademarks Fitbug identifies in the Complaint.

152.    Use of the FITBIT trademark does not cause reverse confusion in light of any of the trademarks Fitbug identifies in the Complaint.

153.    The FITBIT trade dress does not resemble any trade dress used by Fitbug for its FITBUG products.

154.    The FITBIT trade dress is not likely to cause confusion in light of FITBIT and any of the trademarks Fitbug identified in the Complaint.

155.    The FITBIT trade dress does not cause confusion in light of FITBIT and any of the trademarks Fitbug identified in the Complaint.

156.    The FITBIT trade dress does not cause reverse confusion in light of FITBIT and any of the trademarks Fitbug identified in the Complaint.

157.    The FITBIT trade dress does not contribute toward any confusion in light of FITBIT and any of the trademarks Fitbug identified in the Complaint.

158.    The Fitbit Website does not resemble any trade dress used by Fitbug for its FITBUG products.

159.    The Fitbit Website is not likely to cause confusion in light of any of the trademarks Fitbug identified in the Complaint.

160.    The Fitbit Website does not cause confusion between FITBIT and any of the trademarks Fitbug identified in the Complaint.

161.    The Fitbit Website does not cause reverse confusion between FITBIT and any of the trademarks Fitbug identified in the Complaint.

162.    The Fitbit Website does not contribute toward any confusion between FITBIT and any of the trademarks Fitbug identified in the Complaint.

163.    Fitbug has not provided to Fitbit any evidence of alleged actual confusion arising from Fitbit's use of FITBIT in U.S. markets.

164.    Fitbit believes and therefore alleges that Fitbug has no evidence of actual confusion arising from Fitbit's use of FITBIT in U.S. markets.

165.    Fitbit believes and therefore alleges that Fitbug has no evidence of actual confusion arising from Fitbit's use of FITBIT on any goods and services identified in U.S. Registration No. 3,732,334 in U.S. markets.

166.    Accordingly, Fitbit seeks a judgment declaring that its use of the FITBIT mark does not infringe and has not infringed any of the trademarks Fitbug identified in the Complaint.

## SECOND COUNTERCLAIM FOR RELIEF

### (Declaratory Judgment of No Unfair Competition or False Designation of Origin)

167.    Fitbit incorporates by reference the preceding paragraphs of this counterclaim.

/ / /

/ / /

168. By virtue of Fitbug's assertion in this action that Fitbit's longstanding use of the FITBIT mark constitutes unfair competition and false designation of origin, there is an actual controversy between the parties that warrants declaratory relief.

169. Fitbit's use of FITBIT in the United States does not constitute unfair competition.

170. Fitbit's use of FITBIT in the United States on any goods and services identified in U.S. Registration No. 3,732,334 does not constitute unfair competition.

171. Consumers in U.S. markets do not believe Fitbug to be the source of FITBIT-branded goods.

172. Purchasers of FITBIT-branded goods in U.S. markets do not believe Fitbug to be the source of those goods.

173. A majority of consumers in U.S. markets do not believe Fitbug to be the source of FITBIT-branded goods.

174. A majority of purchasers of FITBIT-branded goods in U.S. markets do not believe Fitbug to be the source of those goods.

175. Fitbit does not unfairly compete and has not unfairly competed with Fitbug or falsely designated the origin of its goods through its use of FITBIT in the United States.

176. Accordingly, Fitbit seeks a judgment declaring that it does not compete unfairly and has not competed unfairly with Fitbug and that it does not falsely designate and has not falsely designated the origin of its goods through its use of the FITBIT Marks in the United States in violation of federal law.

### THIRD COUNTERCLAIM FOR RELIEF

**(Declaratory Judgment Regarding Continued Registration of FITBIT)**

177. Fitbit incorporates by reference the preceding paragraphs of this counterclaim.

178. By virtue of the fact that Fitbug seeks cancellation of the registration of the FITBIT mark, there is an actual controversy between the parties that warrants declaratory relief.

179. Fitbit's registered mark does not create a likelihood of confusion in light of any mark that Fitbug claims.

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

180.    Fitbit made no false or misleading material statements in connection with its trademark registration.

181.    Fitbit, its employees, attorneys and agents acted in good faith in pursing registration of the FITBIT mark.

182.    Neither Fitbit nor any of its employees, attorneys or agents had any intent to deceive the PTO.

183.    Fitbit believes and therefore alleges that the PTO did not rely on any alleged misrepresentations in connection with its registration.

184.    Accordingly, Fitbit seeks a judgment declaring that it is entitled to continued registration of its FITBIT mark.

## FOURTH COUNTERCLAIM FOR RELIEF

### (Declaratory Judgment of No Unfair Competition under California Law)

185.    Fitbit incorporates by reference the preceding paragraphs of this counterclaim.

186.    By virtue of Fitbug's assertion in this action that Fitbit's use of the FITBIT mark constitutes unfair competition, there is an actual controversy between the parties that warrants declaratory relief.

187.    Fitbit's use of the FITBIT mark in the United States does not constitute and has not constituted unfair competition.

188.    Accordingly, Fitbit seeks a judgment declaring that its use of the FITBIT mark in the United States does not constitute and has not constituted unfair competition in violation of Cal. Bus. Prof. Code § 17200 *et seq.* or California common law.

## PRAYER FOR RELIEF

WHEREFORE, Fitbit requests that this Court enter a judgment in its favor and against Plaintiff as follows:

a.    dismissing the Complaint in its entirety and entering judgment for Fitbit and against Plaintiff on Plaintiff's claims;

b.    declaring that Fitbit's use of the FITBIT mark does not infringe, and has not infringed, any of the trademark rights Fitbug identified in the Complaint;

c.      declaring that Fitbit has not competed unfairly with Fitbug or falsely designated the origin of goods through its use of the FITBIT mark;

d.      declaring that Fitbit's use of the FITBIT mark is not likely to cause confusion, mistake or deception, or reverse confusion, mistake or deception with the FITBUG Mark, and that FITBIT did not deceive or commit fraud on the PTO in obtaining the FITBIT Registration;

e.      declaring that  Fitbit is entitled to continued registration of its FITBIT trademark;

f.      declaring that Fitbit's use of the FITBIT mark in the United States does not constitute and has not constituted unfair competition in violation of Cal. Bus. Prof. Code § 17200 *et seq.* or California common law;

g.      awarding attorneys fees to Fitbit pursuant to the Lanham Act;

h.      awarding costs to Fitbit; and

i.      granting such additional relief as the Court may deem appropriate.

## JURY DEMAND

Fitbit demands trial by jury.

## ANSWER

## NATURE OF ACTION

1.      Fitbit admits that the Complaint purports to allege causes of action for trademark infringement, unfair completion and unfair business practices under the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, including 15 U.S.C. §§ 1114, 1119, 1125(a), California Business and Professions Code § 17200 *et seq.*, and the common law.  Fitbit denies each and every other allegation contained in Paragraph 1 of the Complaint.

## JURISDICTION AND VENUE

2.      Fitbit admits the allegations in Paragraph 2 of the Complaint, except that it denies that it has committed the acts complained of in the Complaint unless otherwise specifically admitted elsewhere in this Answer.

3.      Fitbit admits that assignment on a District-wide basis is proper.

/ / /

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**THE PARTIES**

4.      Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint, and on that basis denies them.

5.      Fitbit admits the allegations in Paragraph 5 of the Complaint, except that it denies that it is a corporation organized under California law.

**FACTUAL ALLEGATIONS**

6.      Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and on that basis denies them.

7.      Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint, and on that basis denies them.

8.      Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and on that basis denies them.

9.      Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint, and on that basis denies them, except Fitbit admits that U.S. Patent and Trademark Office records available online identify "Fitbug, Ltd." as the owner of Registration numbers 3,178,665 and 3,716,942.

10.      Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and on that basis denies them.

11.      Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and on that basis denies them.

12.      Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint, and on that basis denies them.

13.      Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint, and on that basis denies them.

14.      Fitbit denies the allegations in Paragraph 14 of the Complaint, except it that it admits it began fulfilling orders for its FITBIT branded products in 2009, and that its goods and services include fitness related portable electronic devices and online services.

15.      Fitbit admits the allegations in Paragraph 15 of the Complaint.

16.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint, and on that basis denies them.

17.     Fitbit denies all allegations contained in Paragraph 17 of the Complaint, except that it admits that at all relevant times Fitbit devices and the Fitbit website have displayed the FITBIT mark and that the FITBIT logo includes lowercase letters with a light blue dot over each letter "i" in the FITBIT mark.

18.     Fitbit denies all allegations contained in Paragraph 18 of the Complaint.

19.     Fitbit denies all allegations contained in Paragraph 19 of the Complaint.

20.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and on that basis denies them, except that it admits that Fitbit has maintained a website and used branded product packaging, copies of which speak for themselves.

21.     Fitbit denies all allegations contained in Paragraph 21 of the Complaint.

22.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint, and on that basis denies them.

23.     Fitbit denies all allegations contained in Paragraph 23 of the Complaint.

24.     Fitbit denies all allegations contained in Paragraph 24 of the Complaint, except that it admits that Plaintiff has never expressly "authorized" Fitbit's use of the FITBIT mark. Fitbit denies any implied assertion that it required any such authorization or consent.

25.     Fitbit denies all allegations contained in Paragraph 25 of the Complaint.

26.     Fitbit denies all allegations contained in Paragraph 26 of the Complaint.

27.     Fitbit denies all allegations contained in Paragraph 27 of the Complaint, except that it is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to customer service inquiries that Plaintiff has allegedly received from consumers, and on that basis denies them.

28.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint, and on that basis denies them.

/ / /

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

29.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint, and on that basis denies them.

30.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint, and on that basis denies them.

31.     Fitbit denies all allegations contained in Paragraph 31 of the Complaint, except that it admits that it received a letter dated December 9, 2011 from Mark J. Rosenberg, counsel for Plaintiff.

## FIRST CAUSE OF ACTION

32.     In answering Paragraph 32, Fitbit restates and incorporates by reference Paragraphs 1-31 of this answer as though fully set forth herein.

33.     Fitbit denies all allegations contained in Paragraph 33 of the Complaint.

34.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint, and on that basis denies them.

35.     Fitbit denies all allegations contained in Paragraph 35 of the Complaint.

36.     Fitbit denies all allegations contained in Paragraph 36 of the Complaint.

37.     Fitbit denies all allegations contained in Paragraph 37 of the Complaint, except that it admits that it has provided goods and services in connection with the FITBIT mark in interstate commerce.

38.     Fitbit denies all allegations contained in Paragraph 38 of the Complaint.

## SECOND CAUSE OF ACTION

39.     In answering Paragraph 39, Fitbit restates and incorporates by reference Paragraphs 1-38 of this answer as though fully set forth herein.

40.     Fitbit denies all allegations contained in Paragraph 40 of the Complaint.

41.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint, and on that basis denies them.

42.     Fitbit denies all allegations contained in Paragraph 42 of the Complaint.

43.     Fitbit denies all allegations contained in Paragraph 43 of the Complaint.

44.     Fitbit denies all allegations contained in Paragraph 44 of the Complaint.

45.     Fitbit denies all allegations contained in Paragraph 45 of the Complaint, except that it admits that it has used the FITBIT mark in interstate commerce.

46.     Fitbit denies all allegations contained in Paragraph 46 of the Complaint.

47.     Fitbit denies all allegations contained in Paragraph 47 of the Complaint.

## THIRD CAUSE OF ACTION

48.     In answering Paragraph 48, Fitbit restates and incorporates by reference Paragraphs 1-47 of this answer as though fully set forth herein.

49.     Fitbit denies all allegations contained in Paragraph 49 of the Complaint.

50.     Fitbit denies all allegations contained in Paragraph 50 of the Complaint.

51.     Fitbit denies all allegations contained in Paragraph 51 of the Complaint.

52.     Fitbit denies all allegations contained in Paragraph 52 of the Complaint.

53.     Fitbit denies all allegations contained in Paragraph 53 of the Complaint.

54.     Fitbit denies all allegations contained in Paragraph 54 of the Complaint.

## FOURTH CAUSE OF ACTION

55.     In answering Paragraph 55, Fitbit restates and incorporates by reference Paragraphs 1-54 of this answer as though fully set forth herein.

56.     Fitbit admits the allegations in Paragraph 56 of the Complaint.

57.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint, and on that basis denies them, except that Fitbit admits that the FITBIT registration identifies the dates of first use for the FITBIT mark in commerce as being at least as early as September 25 and 29, 2009.

58.     Fitbit denies all allegations contained in Paragraph 58 of the Complaint.

59.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 59 of the Complaint, and on that basis denies them.

60.     Fitbit denies all allegations contained in Paragraph 60 of the Complaint.

61.     Fitbit denies all allegations contained in Paragraph 61 of the Complaint.

62.     Fitbit denies all allegations contained in Paragraph 62 of the Complaint.

63.     Fitbit denies all allegations contained in Paragraph 63 of the Complaint.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

64.     Fitbit denies all allegations contained in Paragraph 64 of the Complaint.

65.     Fitbit denies all allegations contained in Paragraph 65 of the Complaint.

66.     Fitbit denies all allegations contained in Paragraph 66 of the Complaint.

### FIFTH CAUSE OF ACTION

67.     In answering Paragraph 67, Fitbit restates and incorporates by reference Paragraphs 1-66 of this answer as though fully set forth herein.

68.     Fitbit lacks sufficient information to form a belief as to the truth of the allegations in Paragraph 68 of the Complaint, and on that basis denies them, except that Fitbit admits that it provides goods and services including portable electronic devices, used in connection with personal fitness.

69.     Fitbit denies all allegations contained in Paragraph 69 of the Complaint.

70.     Fitbit denies all allegations contained in Paragraph 70 of the Complaint, except Fitbit lacks sufficient information to form a belief as to the truth of the allegations as to any acquired distinctiveness in the FITBUG mark, and on that basis denies them.

71.     Fitbit denies all allegations contained in Paragraph 71 of the Complaint.

72.     Fitbit denies all allegations contained in Paragraph 72 of the Complaint.

73.     Fitbit denies all allegations contained in Paragraph 73 of the Complaint.

74.     Fitbit denies all allegations contained in Paragraph 74 of the Complaint.

### PRAYER FOR RELIEF

75.     To the extent that a responsive pleading is required to Plaintiff's Prayer for Relief, Fitbit denies all allegations contained in those paragraphs of the Complaint.

76.     Unless expressly admitted elsewhere in this Answer, Fitbit denies all allegations of the Complaint.

### AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

### (Laches)

77.     Fitbit believes and therefore alleges that Plaintiff became aware of Fitbit and its products and services no later than September 11, 2008. Despite Plaintiff's knowledge of Fitbit

and Fitbit's use of the FITBIT mark, Plaintiff delayed filing this lawsuit until March 29, 2013. Between September 11, 2008 and March 29, 2013, Fitbit invested heavily in its FITBIT brand, which has grown in recognition and developed significant goodwill with the consuming public. If Fitbug were permitted to pursue this litigation after such a lengthy delay, Fitbit would suffer severe loss in goodwill and reputation that it has earned over the past four and a half years. Therefore, the doctrine of laches bars Plaintiff's claims.

## SECOND DEFENSE

### (Waiver, Acquiescence and Estoppel)

78.     Fitbit believes and therefore alleges that Plaintiff became aware of Fitbit no later than September 11, 2008. On September 11, 2008 – two days after Fitbit met with widespread acclaim at Techcrunch 50 – Dennis Skigen, identifying himself as Chief Marketing Officer at Fitbug USA, sent an email to Fitbit. Plaintiff's email did not raise any concerns about Fitbit's name or brand, but instead proposed that the companies discuss collaboration.

79.     Fitbit believes and therefore alleges that Plaintiff knew or should have known in September 2008 of Fitbit's use of its name and mark in connection with personal fitness related products and services. Plaintiff nevertheless delayed filing this lawsuit until March 29, 2013.

80.     By its conduct or actions, Plaintiff impliedly consented to Fitbit's use of the FITBIT mark. Although Fitbit denies that its use of the FITBIT mark is infringing, it nevertheless relied to its detriment on Plaintiff's apparent consent to Fitbit's use of its name and mark. Therefore, doctrines of waiver, acquiescence and estoppel bar Plaintiff's claims in whole or in part.

## THIRD DEFENSE

### (Statute of Limitations)

81.     Plaintiff became aware of Fitbit and its goods and services no later than September 11, 2008. Plaintiff did not file this lawsuit until March 29, 2013—over four and a half years after learning of Fitbit. Therefore, the applicable statutes of limitation bar Plaintiff's third cause of action for "common law trademark and unfair competition" and Plaintiff's fifth cause of action for unfair competition under California Business and Professions Code §§ 17200 et seq.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**FOURTH DEFENSE**

**(Lacks Secondary Meaning)**

82.     Plaintiff's claims are barred in whole or in part because its FITBUG Mark is not inherently distinctive and has not attained secondary meaning.

**FIFTH DEFENSE**

**(Failure State a Claim)**

83.     Plaintiff's claims are barred in whole or in part because the Complaint fails to state a claim upon which relief can be granted.

**SIXTH DEFENSE**

**(No Likelihood of Confusion)**

84.     Plaintiff's claims are barred in whole or in part because Fitbit's use of the FITBIT mark is not likely to cause, and has not caused, consumer confusion, deception or mistake with respect to Plaintiff's FITBUG Mark and Fitbit's FITBIT mark.

**SEVENTH DEFENSE**

**(Failure to Mitigate)**

85.     Without admitting that the Complaint states a claim or that damages exist, Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate damages.

**EIGHTH DEFENSE**

**(Failure to Plead Fraud)**

86.     Plaintiff's fourth cause of action seeks cancellation of Fitbit's U.S. Trademark Registration No. 3,732,334 on the grounds that Fitbit acquired it by fraud.  Plaintiff fails to plead the elements of fraud with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).

**NINTH DEFENSE**

**(Genericness)**

87.     Plaintiff's generic use of term "fitbug" bars Plaintiff's claims in whole or part.

/ / /

/ / /

## TENTH DEFENSE

### (Abandonment)

88.     Plaintiff has abandoned all rights in the mark, barring in whole or in part Plaintiff's claims.

### ADDITIONAL DEFENSES

89.     Defendant reserves the right to assert additional defenses based on information learned or obtained through discovery or further investigation.

### PRAYER FOR RELIEF

WHEREFORE, Fitbit requests that this Court enter a judgment in its favor and against Plaintiff as follows:

j.      dismissing the Complaint in its entirety and entering judgment for Fitbit and against Plaintiff on Plaintiff's claims;

k.      awarding attorneys fees to Fitbit pursuant to the Lanham Act;

l.      awarding costs to Fitbit; and

m.      granting such additional relief as the Court may deem appropriate.

Dated:   May 31, 2013                    FENWICK & WEST LLP


                                         By: /s/ Jedediah Wakefield
                                             Andrew P. Bridges
                                             Jedediah Wakefield
                                             Sean S. Wikner

                                             Attorneys for Defendant and Counter-Claimant
                                             FITBIT, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**JURY DEMAND**

Fitbit demands trial by jury.


Dated:   May 31, 2013                    FENWICK & WEST LLP


                                         By: /s/ Jedediah Wakefield
                                             Andrew P. Bridges
                                             Jedediah Wakefield
                                             Sean S. Wikner

                                             Attorneys for Defendant and Counter-Claimant
                                             FITBIT, INC.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO