1 ANDREW P. BRIDGES (CSB No. 122761)
abridges@fenwick.com
2 JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
3 TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
4 SEAN S. WIKNER (CSB No. 268319)
swikner@fenwick.com
5 CIARA N. MITTAN (CSB No. 293308)
cmittan@fenwick.com
6 FENWICK & WEST LLP
555 California Street, 12th Floor
7 San Francisco, CA  94104
Telephone:    415.875.2300
8 Facsimile:     415.281.1350

9 Attorneys for Defendant and Counter-Claimant
FITBIT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FITBUG LIMITED, a United Kingdom Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>FITBIT, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 13-cv-01418-SC<br><br>**DEFENDANT FITBIT, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:    May 15, 2015<br>Time:   10:00 am<br>Judge:  The Honorable Samuel Conti<br>Courtroom: 1, 17th Floor |
| FITBIT, INC., a Delaware Corporation,<br><br>Counter-Claimant,<br><br>v.<br><br>FITBUG LIMITED,  a United Kingdom Limited Liability Company,<br><br>Counter-Defendant. | |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| NOTICE OF MOTION AND MOTION | | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | | 2 |
| I. INTRODUCTION | | 2 |
| II. ARGUMENT | | 4 |
| A. | Fitbit Deserves to Recover Its Attorneys' Fees under the Lanham Act. | 4 |
| | 1. The "Exceptional Case" Standard Under the Lanham Act Does Not Require Bad Faith or Culpable Misconduct. | 4 |
| | 2. This Case Stands Out from Others with Respect to the Substantive Weakness of Plaintiff's Claims and the Unreasonable Manner in Which Plaintiff Pursued Them. | 6 |
| |    a. Plaintiff Knew or Should Have Known That Laches Barred Its Claims Before Filing This Lawsuit. | 6 |
| |    a. Plaintiff's Arguments Against Laches Lacked Legal or Factual Support. | 8 |
| | 3. Plaintiff Pursued Its Claims in an Unreasonable Manner. | 9 |
| |    a. Plaintiff's Overreaching Claim for Fitbit's Profits Was Legally and Factually Untenable. | 9 |
| |    b. Plaintiff's Claim for "Lost Royalty" Damages Was Improper Because Plaintiff Had No Licensing or Royalty History. | 11 |
| | 4. Plaintiff's Eleventh Hour Abandonment of Its Overreaching Claims Does Not Save It from a Fee Award. | 12 |
| B. | The Court Should Award Fitbit the Fees It Reasonably Incurred in Defending Against Plaintiff's State- and Common-Law Claims. | 13 |
| III. CONCLUSION | | 14 |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
   393 F.3d 1378 (Fed.Cir. 2005) ..................................................................................................4

*Dreamwerks Prod. Grp., Inc. v. DreamWorks SKG*,
   142 F.3d 1127 (9th Cir. 1998) ................................................................................................10

*Fair Wind Sailing, Inc. v. Dempster*,
   764 F.3d 303 (3d Cir. 2014) .....................................................................................................5

*Graciano v. Robinson Ford Sales, Inc.*,
   144 Cal. App. 4th 140 (2006) .................................................................................................13

*Gracie v. Gracie*,
   157 Fed.Appx. 967 (9th Cir. 2005) .........................................................................................14

*Groupion, LLC v. Groupon, Inc.*,
   859 F. Supp. 2d 1067 (N.D. Cal. 2012) ....................................................................................9

*Grove v. Wells Fargo Fin. Cal., Inc.*,
   606 F.3d 577 (9th Cir.2010) .....................................................................................................4

*Grupo Gigante Sa De CV v. Dallo & Co., Inc.*,
   391 F.3d 1088 (9th Cir. 2004) ..................................................................................................8

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
   304 F.3d 829 (9th Cir. 2002) ....................................................................................................6

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
   No. 04 CIV. 7203, 2006 WL 1359955
   (S.D.N.Y. May 18, 2006) .......................................................................................................12

*Laskay v. New Line Cinema Corp.*,
   230 F.3d 1367 (9th Cir. 2000) ..................................................................................................5

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) ..................................................................................................9

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ....................................................................................................5

*Nat'l Fire Protection Ass'n, Inc. v. Int'l Code Council, Inc.*,
   No. Civ.A.03–10848, 2006 WL 839501 (D. Mass. Mar. 29, 2006) ........................................12

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*,
   771 F.2d 521 (D.C. Cir. 1985) ..................................................................................................5

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ..................................................................................................... passim

**TABLE OF AUTHORITIES**
**(continued)**
Page(s)

*POM Wonderful, LLC v. Purely Juice, Inc.*,
  No. CV 07-2633 CAS, 2008 WL 4351842 (C.D. Cal. Sept. 22, 2008)
  *aff'd,* 362 F. App'x 577 (9th Cir. 2009) ................................................................. 14

*Quia Corp. v. Mattel Inc.*,
  No. C 10-1902 JF (HRL), 2011 WL 2749576 (N.D. Cal. July 14, 2011) ................ 10, 12

*Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*,
  668 F.3d 677 (9th Cir. 2012) ................................................................................... 4

*South Cone, Inc. v. Timex Corp.*,
  No. 99–CV–2384–L(AJB), 2002 WL 34450329 (S.D. Cal. Apr. 10, 2002) .............. 12

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*,
  127 F.3d 821 (9th Cir. 1997) ................................................................................... 6

*Teal Bay Alliances, LLC v. Southbound One, Inc.*,
  No. CIV.A. MJG-13-2180, 2015 WL 357064 (D. Md. Jan. 26, 2015) ...................... 5

*Trovan, Ltd. v. Pfizer, Inc.*,
  No. CV-98-00094 LGB MCX, 2000 WL 709149 (C.D. Cal. May 24, 2000) ........... 12

*Visible Sys. Corp. v. Unisys Corp.*,
  551 F.3d 65 (1st Cir. 2008) ................................................................................... 10

*Walker v. Countrywide Home Loans, Inc.*,
  98 Cal. App. 4th 1158 (2002) ............................................................................... 14

**STATUTES**

15 U.S.C. § 1117(a) (Lanham Act, § 35(a)) ................................................................. 1, 4, 5, 9

15 U.S.C. § 1117 (Lanham Act, § 35) ......................................................................... *passim*

35 U.S.C. § 285 (Patent Act, § 285) ............................................................................ 4, 5

Cal. Bus. & Prof. Code § 17200 ................................................................................... 14

**RULES**

Civil L.R. 54-5(a) ......................................................................................................... 1

Civil L.R. 54-5(b)(2) and (3) ........................................................................................ 1, 14

Fed. R. Civ. P. 54(d)(1) ................................................................................................ 4

Fed R. Civ. P. 54(d)(2) ................................................................................................ 1

**OTHER AUTHORITIES**

S.Rep. No. 93-1400, at 2 (1974), reprinted in 1974 U.S.C.C.A.N. 7132 ......................... 5

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 15, 2015, in Courtroom 1 of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, at 10:00 a.m. or as soon thereafter as this matter may be heard, Defendant and Counter-Claimant Fitbit, Inc. ("Fitbit") will and hereby does move for an order granting Fitbit its reasonable attorneys' fees and costs, pursuant to Federal Rule of Civil Procedure 54(d)(2), Section 1117(a) of the Lanham Act and the Court's inherent authority. Pursuant to the Court's March 4, 2015 order, this motion addresses whether the Court should award attorneys' fees and other recoverable expenses. If the Court grants Fitbit's motion, Fitbit will submit further briefing and declarations supporting the amount and reasonableness of fees and costs sought, including information under Civil L.R. 54-5(b)(2) and (3). Dkt. 107.

Fitbit bases its motion upon this Notice of Motion and the Memorandum of Points and Authorities, the Declaration of Jedediah Wakefield and its exhibits accompanying this motion, all evidence and exhibits submitted with the motion, all the pleadings and evidence of record in this matter, and any argument of counsel at the hearing. This motion follows multiple conferences of counsel pursuant to L.R. 54-5(a) which took place on February 11 and February 19, 2015.

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.     INTRODUCTION**

Fitbit seeks its reasonable attorneys' fees and expenses because this was an "exceptional case" under Section 35 of the Lanham Act, 15 U.S.C. § 1117.

Plaintiff delayed for years before voicing any concern to Fitbit, even though Plaintiff consulted lawyers and called Fitbit "thieving bastards" within a few months of Fitbit's launch. On receiving Plaintiff's threat in late 2011, Fitbit's counsel both rebuffed the claim of infringement on the merits and further notified that Plaintiff was already too late: laches barred any claim at that point. Plaintiff delayed a further fifteen months before filing the lawsuit. During all that time, Fitbit built its business on the strength of its own efforts, investments, and ingenuity, not from riding any non-existent coattails of Plaintiff. On learning that Fitbit had attained a reported $300 million valuation, Plaintiff brought the lawsuit. Plaintiff then tried to profit unjustly from its own delay by seeking to commandeer for itself the profits that Fitbit had gained during the delay, and to threaten to derail, as leverage for settlement, the extraordinary success that Fitbit had justly earned as the leading developer of fitness tracking products in the marketplace. Evidence suggests that, for some of Plaintiff's investors and its management, the lawsuit sought a windfall, entirely out of proportion to Plaintiff's own accomplishments and efforts, in order to sweeten the financials of Plaintiff's publicly traded parent company. Key investors made strategic short-term loans expecting their full payback (and presumably more) by July 2015, as the following press release by Plaintiff on July 29, 2014, intimated:

> **Fitbug Holdings Plc ('Fitbug' or 'the Company')**
> **Secures £1,750,000 Loan on Attractive Terms**
> **February 2015 Trial Date Set for Legal action Against Fitbit**
>
> Fitbug Holdings Plc, the AIM listed provider of online personal health and well-being services, is pleased to announce that NW1 Investments Limited and Kifin Limited ('Loan Holder'), a Kirsh Group subsidiary have together agreed to loan £1,750,000 (the 'Loan') to the Company.
>
> The Loan is repayable by 31 July 2015 and will accrue interest at a rate of 5% per annum, payable on a quarterly basis. The funds will be loaned through NW1 Investments Limited, a company in which the family of David Turner and Allan Fisher have a material interest.

FITBIT INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS     2     CASE NO. 13-cv-01418-SC

> The independent directors of the Company, being Fergus Kee, Malcolm Fried, Paul Landau, Ann Jones, Andrew Brummer and Geoffrey Simmonds, consider, having consulted with Cantor Fitzgerald Europe, that the terms of the loan are fair and reasonable in so far as the shareholders are concerned.
>
> A trial date of 9 February 2015 has been set by the U.S. District Court of Northern California to hear the Company's legal action against Fitbit. This legal action alleges trademark infringement, unfair competition and unfair business practices. The Company believes that it has a strong case.
>
> Malcolm Fried, CEO said "The support of NW1 Investments Limited and the Kirsh Group leaves the business well placed to continue developing both its products and trading relationships and also to pursue the legal action against Fitbit to fruition."

Declaration of Jedediah Wakefield in Support of Fitbit, Inc.'s Motion for Attorneys' Fees and Costs ("Wakefield Decl.") ¶ 3 and Ex. 1. [http://www.londonstockexchange.com/exchange/news/market-news/market-news-detail/12032493.html].

After suing, Plaintiff attempted to justify its delay and avoid laches with a series of baseless arguments. First, Plaintiff argued that its delay was excusable because Fitbit might have gone out of business. As this Court recognized, this argument was untenable, as it would allow Plaintiff "to wait and watch, with full knowledge of Fitbit's allegedly infringing use, as Fitbit invested substantial sums of money in advertising and building up goodwill in its allegedly infringing brand, only to intervene once those investments panned out." Dkt. 96 ("MSJ Order") at 12. Next, Plaintiff asserted that "progressive encroachment" excused its delay, based on what the Court found was an "artificial and cramped" description of the relevant market. *Id*. at 19. Finally, Plaintiff's argument that Fitbit could not rely on laches because it was a "willful" infringer never had a legal or factual basis. Plaintiff's decision to ignore a clear defense, and its strained efforts to overcome it with a series of contrived arguments, renders this case exceptional.

The overreaching manner in which Plaintiff pursued its claims further supports this conclusion. Even though Fitbug was virtually unknown in the United States, Plaintiff argued that its mark was "famous" and that Fitbit intentionally sought to trade on Fitbug's supposed reputation, causing "forward confusion." Dkt. 1 ("Compl.") at ¶¶ 12-13, 23, 43, 60. Relying on this flawed theory, Plaintiff (which itself has never been profitable) sought more than ▮

▮▮▮ *dollars* in Fitbit's alleged profits. Plaintiff further sought "lost royalty" damages of over ▮▮▮ *dollars*, even though there was no licensing history or evidence to support that theory. Just weeks before trial, Plaintiff announced it was jettisoning its claims for forward confusion, lost royalties, and disgorgement of profits, but by then Fitbit had been forced to incur significant fees and expert costs to defend against them.

In sum, this was no run-of-the-mill trademark case. It was an opportunistic attempt at a shakedown. It was unreasonable for Plaintiff to watch and wait to see how successful Fitbit would become, and then attempt to divert to itself all that Fitbit had worked for and accomplished. The Court should award Fitbit its reasonable attorneys' fees and costs for this exceptional case.

## II. <u>ARGUMENT</u>

### A. **Fitbit Deserves to Recover Its Attorneys' Fees under the Lanham Act.**

#### 1. **The "Exceptional Case" Standard Under the Lanham Act Does Not Require Bad Faith or Culpable Misconduct.**

The Lanham Act provides reasonable attorneys' fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a).[1] In *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), the Supreme Court reviewed the exceptional case standard under Section 285 of the Patent Act. Like Section 35(a) of the Lanham Act, Section 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Before *Octane Fitness*, the Federal Circuit had taken the position that "a case is 'exceptional' only if a district court either finds litigation-related misconduct of an independently sanctionable magnitude or determines that the litigation was both 'brought in subjective bad faith' and 'objectively baseless.'" *Octane Fitness*, 134 S. Ct at 1756 (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed.Cir. 2005)). The Court in *Octane Fitness*

---

[1] Attorneys' fees under the Lanham Act may also include reasonable "non-taxable" costs that the party cannot recover under Federal Rule of Civil Procedure 54(d)(1). *See Secalt S.A. v. Wuxi Shenxi Const. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012) (affirming district court's finding of exceptionality and fee award under the Lanham Act and reversing and remanding only for determination as to award of nontaxable costs and certain taxable costs); *see also Grove v. Wells Fargo Fin. Cal., Inc.,* 606 F.3d 577, 580 (9th Cir.2010).

FITBIT INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS     4     CASE NO. 13-cv-01418-SC

rejected this standard. Looking to the plain meaning of the term, the Court explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*. at 1756. Thus, it is within a court's discretion to find a case "exceptional" based upon "the governing law and the facts of the case," regardless of whether the losing party acted in bad faith or is otherwise culpable. *Id*.

While *Octane Fitness* specifically concerned Section 285 of the Patent Act, courts have held that its analysis controls the interpretation of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014); *Teal Bay Alliances, LLC v. Southbound One, Inc*., No. CIV.A. MJG-13-2180, 2015 WL 357064, at *1 (D. Md. Jan. 26, 2015) (applying the *Octane Fitness* standard to hold a trademark case "exceptional"). While the Ninth Circuit has not had an opportunity to consider the applicability of *Octane Fitness* to Section 35(a), in *Fair Wind Sailing* the Third Circuit carefully considered the issue and held that that *Octane Fitness* applies to Lanham Act cases as well. 764 F.3d at 314-15. There, the Third Circuit noted that not only is Section 285 identical to Section 35(a), but Congress also referenced Section 285 in enacting Section 35(a). *Id*. at 315, citing S.Rep. No. 93-1400, at 2 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7133. Moreover, in the Supreme Court's explication of the word "exceptional," the Court relied in part on the D.C. Circuit's holding that the term "exceptional," as the Lanham Act uses it, means "uncommon" or "not run-of-the-mill." *Octane Fitness*, 134 S. Ct. at 1756 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985)). The *Octane Fitness* Court also noted that the Lanham Act fee provision is "identical" to § 285 of the Patent Act. *Id*. The Third Circuit in *Fair Wind Sailing* observed: "[w]e believe that the Court was sending a clear message that it was defining 'exceptional' not just for the fee provision in the Patent Act, but for the fee provision in the Lanham Act as well." 764 F.3d at 315.[2]

---

[2] Even before *Octane Fitness*, the Ninth Circuit had identified a number of circumstances that support a finding a plaintiff's case exceptional, including asserting an objectively unreasonable claim or ignoring a clear defense. *See Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792, 816 (9th Cir. 2003); *Laskay v. New Line Cinema Corp*., 230 F.3d 1367 (9th Cir. 2000). The

### 2. This Case Stands Out from Others with Respect to the Substantive Weakness of Plaintiff's Claims and the Unreasonable Manner in Which Plaintiff Pursued Them.

Fitbit won summary judgment on all of Plaintiff's asserted claims (Lanham Act trademark infringement, Lanham Act unfair competition, common law trademark infringement and unfair competition, California unfair competition and declaratory judgment) on laches grounds. The case stands out from typical trademark infringement disputes not only for Plaintiff's attempts to overcome an obvious laches defense but also the overreaching manner in which Plaintiff pursued its claims. Because the case was exceptional, the Court should award Fitbit its reasonable attorneys' fees and non-taxable costs.[3] Fitbit's fees for defending against Plaintiff's claims, not including fees for this motion, come to approximately $2,155,000, and its costs, including expert fees, come to approximately $433,000.

#### a. Plaintiff Knew or Should Have Known That Laches Barred Its Claims Before Filing This Lawsuit.

Laches bars a claim where the plaintiff delays unreasonably, resulting in prejudice to the defendant. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002). Here, there was never any question that Plaintiff's delay in filing this lawsuit by over four and a half years was unreasonable and that the delay prejudiced Fitbit. During its long delay, Plaintiff closely followed Fitbit, waiting and watching as Fitbit grew from a start-up to become a market leader. Plaintiff filed suit only after reading that Fitbit had reportedly raised $30 million dollars at a $300 million plus valuation. Dkt. 50-100 (Exhibit 56 to the Declaration of Jedediah Wakefield in Support of Defendant Fitbit, Inc.'s Motion for Summary Judgment (Dkt. 56)("Wakefield MSJ Decl.")); Dkt. 50-46 (Wakefield MSJ Ex. 2) [Kee Depo.] at 133:11-17; Compl. Investors funded the lawsuit. *See* Wakefield Decl. Ex. 1 [July 29, 2014 Press Release]. Plaintiff argued that Fitbit would not suffer prejudice by an injunction stripping Fitbit of its name, but that argument was incompatible with Plaintiff's claim that Fitbit's brand had come to dominate the market. Plaintiff

---

Ninth Circuit had also made clear that a prevailing defendant need not show evidence of bad faith to recover. *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir. 1997).

[3] Fitbit does not seek fees relating to Fitbit's counterclaims under California's unfair competition or false advertising law in light of the outcome of those claims.

did not merely know that its case threatened to inflict prejudice on Fitbit: Plaintiff was counting on the prejudice as leverage to bring Fitbit to its knees or to the bargaining table.

Plaintiff knew or should have known that laches presumptively barred its claims when it filed this lawsuit four and a half years after learning about Fitbit. That was well outside the longest conceivable limitations period, longer even than the four-year period that Plaintiff argued should apply to the claims.[4] *See* Dkt. 65-4 (Fitbug MSJ Opp.) at 4. Because the Court found, and the overwhelming evidence shows, that Plaintiff had extensive knowledge of Fitbit in September 2008, four and a half years before Plaintiff filed the complaint, Plaintiff should have known that laches presumptively barred its claims when it filed its Complaint.

The Court found that, in September 2008, (1) Fitbit had announced its products and began receiving significant media coverage; (2) Fitbit's website was active and visitors to the site could see Fitbit's trademark, learn about its products, and place an order for a FITBIT-brand device; (3) individuals both within and outside Fitbug contacted Plaintiff to point out Fitbit's entry in the market; (4) Plaintiff referred to Fitbit and its product and service as "[a]nother competitor" and a "total ripoff"; (5) a Fitbug employee wrote that "[Fitbit] will become an issue and I'd rather be one step ahead;" (6) in reference to Fitbit's announced products and user interface, a consultant wrote to Paul Landau, Plaintiff's CEO, that Fitbit "appears to be doing what Fitbug does but slightly more . . ."; and (7) Plaintiff's chief marketing officer attempted to contact Fitbit to discuss potential partnerships. MSJ Order at 7-8. The Court also found that, in the ensuing months, Plaintiff discussed the alleged infringement of its intellectual property and the possibility of sending a cease-and-desist letter; it also found that Mr. Landau, Plaintiff's CEO, called Fitbit "thieving bastards." *Id.* at 8-9. In short, Plaintiff knew about Fitbit and believed that Fitbit's use of its trademark was a problem in 2008, yet it delayed taking legal action until March 2013.

Fitbug also had ample notice that laches barred its claims. On December 9, 2011, Plaintiff's counsel for the first time sent a letter to Fitbit accusing Fitbit of infringing Plaintiff's rights in the FITBUG mark. *Id.* at 5. Fitbit promptly denied the allegations on December 21,

---
[4] As Fitbit briefed in its motion for summary judgment, a presumption of laches arises when a plaintiff files claims outside the two-year limitations period for common-law trademark infringement. Dkt. 46-4 ("Fitbit MSJ") at 11-12.

2011 *and told Plaintiff that its claims were untimely.* Fitbit's counsel wrote:

> We are surprised that Fitbug is writing about the "fitbit" trademark at this time, more than three years after it had actual knowledge of Fitbit's plans to use the "fitbit" trademark. Fitbug contacted our client in September 2008 when Fitbit first announced this product, but Fitbug did not complain about the trademark at that time, nor for years thereafter, until now. *In view of this prolonged delay, any attempt by Fitbug to raise such claims would be barred by laches, acquiescence and estoppel.*

Dkt. 50-13 (Exhibit 12 to the Declaration of James Park in Support of Defendant Fitbit, Inc.'s Motion for Summary Judgment (Dkt. 46-6)).

Despite this warning, Plaintiff continued to wait over *fifteen months more* before filing the lawsuit on March 29, 2013. Plaintiff's decision to delay more than four years in the face of clear admonitions on this point underscores the unreasonableness of Plaintiff's position. Because the facts and governing law so clearly establish that Plaintiff unreasonably delayed bringing its claims, and that the delay prejudiced Fitbit, this case stands out from others and is exceptional under the Lanham Act. *See Octane Fitness*, 134 S. Ct. at 1756.

### a. Plaintiff's Arguments Against Laches Lacked Legal or Factual Support.

Plaintiff's effort to overcome laches by contriving a series of vain arguments further underscores the exceptional nature of this case. As the Court recognized, Plaintiff's effort to justify its delay by arguing that Fitbit might have gone out of business was untenable from the start and exemplified the inequitable nature of Plaintiff's claims. MSJ Order at 12, citing *Grupo Gigante Sa De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1102-03 (9th Cir. 2004) (a plaintiff "cannot simply wait without explanation to see how successful the defendant's business will be and then ask for an injunction to take away good will developed by defendant in the interim.").

Similarly, Plaintiff's "progressive encroachment" argument, that Fitbit had "expanded" into Plaintiff's "business-to-business-to consumer" market, never had any factual or legal basis. Instead, Fitbit's growth in that market "was simply growth of its existing business, not expansion into a new market." MSJ Order at 17. As the Court observed, Plaintiff's "artificial and cramped" description of the relevant market undermined its progressive encroachment argument, and Plaintiff offered "no objective explanation" supporting it. *Id*. at 19.

FITBIT INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS      8      CASE NO. 13-cv-01418-SC

Finally, Plaintiff lacked any basis for its argument that unclean hands barred Fitbit from asserting laches. That argument rested on the mere fact that Fitbit had heard of Fitbug before selling its products. As the Court observed, however, "in the bad faith context, numerous courts have found that "[p]rior knowledge of a senior user's trademark does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Id*. at 27.

In sum, Plaintiff chose to file this case despite an obvious defense, and then it sought to overcome that defense with a series of contrived and untenable arguments. These facts make this case stand out from most trademark cases. This Court should conclude that this was an exceptional case under 15 U.S.C. § 1117(a).

### 3. Plaintiff Pursued Its Claims in an Unreasonable Manner.

The Court should also find that this case is exceptional because of the overreaching manner in which Plaintiff pursued its claims. In addition to its unreasonable delay, Plaintiff proceeded on overreaching liability and damages theories that lacked a basis in fact or applicable law, namely its claim of forward confusion, its demands for Fitbit's profits, and its effort to obtain a "lost royalty" award. Plaintiff ultimately abandoned these claims, but only 20 days before trial and just one week before the deadline for all pretrial filings. By then, Fitbit had already incurred significant fees and expenses to defend against the claims and arguments that Plaintiff jettisoned at the last minute. Fitbit should recover the fees and costs it incurred to defend against Plaintiff's consistently overreaching and meritless claims. *See Octane Fitness*, 134 S. Ct. at 1751.

#### a. Plaintiff's Overreaching Claim for Fitbit's Profits Was Legally and Factually Untenable.

Plaintiff's unreasonable attempt to obtain all of Fitbit's U.S. profits is a further basis for finding this case exceptional. *See* Wakefield Decl. Ex. 2. To recover profits, Ninth Circuit law requires a plaintiff to show willful infringement. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993); *Groupion, LLC v. Groupon, Inc*., 859 F. Supp. 2d 1067, 1081 (N.D. Cal. 2012). Attempting to support a willfulness claim, Plaintiff alleged that its own goods and services had acquired "wide renown," had "become famous" and were "widely recognized by the purchasing public throughout the United States to be of the highest quality," resulting in good

will "of inestimable value" to Plaintiff. Compl. ¶¶ 12-13. Based on those allegations, Plaintiff alleged that Fitbit had intentionally attempted to trade on Plaintiff's fame and reputation. *Id.*, ¶¶ 23, 43. These claims went beyond hyperbole into the realm of fantasy.

The notion that Fitbit sought to get a free ride on the supposed "fame" of the FITBUG mark never made sense. Leading up to Fitbit's launch, Plaintiff had virtually no presence in the United States. *See* Fitbit MSJ at 4-5; Dkt. 46-19 (Wakefield MSJ Decl. Ex. 7) (showing Plaintiff's low U.S. sales). Fitbug had not advertised in the U.S., it had almost no U.S. sales, and it had no employees or offices in the U.S. Dkts. 46-19, 46-63 (Wakefield MSJ Decl. Exs. 7, 57); Dkt. 46-14 (Wakefield MSJ Decl. Ex. 1) at 49:5-50:3, 256:12-15. Given the absence of goodwill in the FITBUG mark, it was not surprising that Plaintiff came forward with no evidence supporting a claim for willful infringement. MSJ Order at p. 27 ("Fitbug has offered no evidence demonstrating that [Fitbit] employed the alleged infringing mark with the wrongful intent of capitalizing on its goodwill." (internal quotations omitted)).

Moreover, Plaintiff's profits claim was fundamentally inconsistent with its reverse confusion theory. Unlike traditional forward confusion, reverse confusion occurs when consumers doing business with the earlier "senior" user of a mark believe that they are dealing with a later, but better known, "junior" user of a mark. *Dreamwerks Prod. Grp., Inc. v. DreamWorks SKG*, 142 F.3d 1127, 1130 (9th Cir. 1998). The notion that an infringer's profits might be attributable to infringement makes sense in a forward confusion case, where consumers buy from the later user based on a mistaken belief that they are dealing with the earlier user. But in a reverse confusion case, this rationale does not apply: "[R]everse confusion does not lend itself to any automatic assumption that there is an equivalence between defendant's profits and plaintiff's diverted sales." *See Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 80 (1st Cir. 2008)). As this Court observed in *Quia Corp. v. Mattel Inc.*, No. C 10-1902 JF (HRL), 2011 WL 2749576 (N.D. Cal. July 14, 2011), an award of profits as a measure of damages is inappropriate in a reverse confusion case "where the junior user's profits are likely to exceed the senior user's diverted sales."

To overcome this problem and support its claim for profits, Plaintiff alleged not only

reverse confusion—the subject of Plaintiff's failed motion for summary judgment—but also forward confusion. Compl. ¶ 25-26. Like its willful infringement theory, however, Plaintiff's forward confusion case never held water. There was no evidence that the millions of consumers buying from Fitbit did so based on confusion with the unknown FITBUG brand.

To respond to Plaintiff's forward confusion theory and profits claim, Fitbit retained Dr. E. Deborah Jay of Field Research to conduct a survey as to the likelihood of forward confusion.[5] Wakefield Decl. ¶ 10. That survey showed that *no respondents* encountering Fitbit products associated them with Fitbug. Dkt. 50-49 (Wakefield MSJ Decl. Ex. 5) [Jay Report] at 6-10. Rather than drop its forward confusion claim then, however, Plaintiff retained a purported "rebuttal" expert, Dr. Bruce Isaacson, who served a report purporting to critique Dr. Jay's survey. Dkt. 50-50 (Wakefield MSJ Decl. Ex. 6) [Isaacson Rebuttal Report]. But Dr. Isaacson did not design or conduct any survey regarding the FITBUG or FITBIT marks in this case. Wakefield Decl. Ex. 7 [Isaacson Depo Tx.] at 14:11-21; 48:1-16. Nor did he disclose any opinion regarding whether there was a likelihood of forward confusion. *Id.* at 45:12-46:20; 50:9-12. The parties deposed Dr. Jay and Dr. Isaacson, resulting in additional fees and costs related to the question of forward confusion. Wakefield Decl. ¶ 13.

Plaintiff ultimately dropped its claim for profits and its forward confusion claim on the eve of trial. In doing so, Plaintiff conceded that neither Dr. Jay nor Dr. Isaacson's testimony would be necessary at trial. Wakefield Decl., ¶ 17, Ex. 9. By then, however, Fitbit had incurred extensive fees and costs in discovery and trial preparation to defend against Plaintiff's hyperaggressive attempt to deprive Fitbit of all of its profits.

     **b.**  **Plaintiff's Claim for "Lost Royalty" Damages Was Improper Because Plaintiff Had No Licensing or Royalty History.**

Plaintiff's other principal damages claim, for alleged "lost royalties," also lacked legal or factual support. Plaintiff sought royalties of nearly $■ million, an amount greater than the value

---

[5] Notably, Plaintiff let the expert disclosure deadline pass without disclosing any expert in support of its claim of forward confusion. Wakefield Decl. ¶ 11; Dkt. No. 37 (Joint Stipulation and Order Revising Schedule for Discovery).

FITBIT INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS   11   CASE NO. 13-cv-01418-SC

of the entire Fitbug business.[6] Wakefield Decl. ¶ 6-7, Exs. 4-5 [Haas Rebuttal Report at 4, ¶ 8; Capital IQ Report]. But Plaintiff admitted that it never licensed or even offered to license its mark to Fitbit or anyone else. *Id.* Ex. 6 [Plaintiff's RFA Responses]. These facts doomed Plaintiff's lost royalty claim, as courts in the Ninth Circuit and throughout the country exclude claims for royalty damages in trademark cases where there is no licensing history for the mark, evidence of licensing negotiations between the parties, or a similar basis on which to calculate lost royalties. *See, e.g., Quia Corp.*, 2011 WL 2749576, at *6 (observing that "the mere possibility of a future license cannot create an issue of fact as to the availability of lost royalties, any more than speculation about the possibility of lost sales can create an issue of fact as to lost profits."); *see also Trovan, Ltd. v. Pfizer, Inc.,* No. CV-98-00094 LGB MCX, 2000 WL 709149, at *17 (C.D. Cal. May 24, 2000) (vacating royalty award); *Nat'l Fire Protection Ass'n, Inc. v. Int'l Code Council, Inc.*, No. Civ.A.03–10848, 2006 WL 839501, at *29 (D. Mass. Mar. 29, 2006) (refusing a royalty claim based on the damages expert's testimony on the outcome of a hypothetical negotiation); *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 CIV. 7203, 2006 WL 1359955, at *4 (S.D.N.Y. May 18, 2006); *see also South Cone, Inc. v. Timex Corp.*, No. 99–CV–2384–L(AJB), 2002 WL 34450329, at *1 (S.D. Cal. Apr. 10, 2002) (finding lost royalty theory "lack[s] any sort of reliability" because plaintiff had no "established history of licensing").

Here, Plaintiff concocted a hypothetical royalty rate by referring to a handful of licenses involving famous marks of other companies that its expert found on the Internet. Wakefield Decl. ¶ 6, Ex. 3 [Haas Report at 15]. Plaintiff could not conceivably have supported a reasonable royalty award, yet it proceeded on this theory until the eve of trial, forcing Fitbit to incur fees and expert costs to defend against it. Along with Plaintiff's other unreasonable tactics, these facts support a finding that this was an exceptional case.

### 4. Plaintiff's Eleventh Hour Abandonment of Its Overreaching Claims Does Not Save It from a Fee Award.

After imposing substantial costs on Fitbit to investigate and defend against those

---

[6] Fitbug Limited is a subsidiary of Fitbug Holdings, which is publicly traded on the London Stock Exchange. Fitbug Holdings' market capitalization at the time Plaintiff filed its Complaint in this case was £1.769 million (GBP), or $2.68 million.

arguments, Plaintiff announced just before trial that it would abandon its forward confusion theory and its requests for millions of dollars in profits or lost royalties. On January 20, 2015, Plaintiff's counsel emailed Fitbit's counsel with a set of proposed joint jury instructions, stating, "[a]s reflected in the [proposed instructions], Fitbug will be proceeding at trial on a theory of reverse confusion only and will seek damages for corrective advertising only." Wakefield Decl. ¶ 15, Ex. 8 [2015 01 20 Email]. The trial was 20 days away. Dkt. 31 (Status Conference Order); Wakefield Decl. ¶ 16. This drastic shift in case theory came just one week before the deadline for the parties' submission of all pretrial filings—trial briefs, exhibit lists, deposition designations, proposed voir dire questions, witness lists, proposed verdict forms, *Daubert* objections, proposed jury instructions, the statement of the case, and motions in limine. Wakefield Decl. ¶ 16; Dkt. 89. By then, however, Fitbit had already incurred substantial fees and costs to defend against Plaintiff's ill-conceived forward confusion claim and its grossly inflated damages claims and to prepare for trial on those claims.

In sum, Plaintiff litigated its claims in an unreasonable manner, proceeding on untenable liability and damages theories, and forcing Fitbit to pay the price, only to abandon the bulk of those theories on the eve of trial. Plaintiff's manner of litigating this case falls well within the ambit of behavior that *Octane Fitness* contemplated in defining an exceptional case. The Court should award Fitbit the fees and costs it reasonably incurred in defending against Plaintiff's invalid claims.

**B. The Court Should Award Fitbit the Fees It Reasonably Incurred in Defending Against Plaintiff's State- and Common-Law Claims.**

Fitbit should recover fees and costs it incurred in defending against Plaintiff's state and common law claims for trademark infringement and unfair competition because those claims concerned issues identical to those underlying Plaintiff's Lanham Act claims. "When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted . . . [a]pportionment is not required when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorneys' time into compensable and noncompensable units." *Graciano v. Robinson*

*Ford Sales, Inc.*, 144 Cal. App. 4th 140, 159 (2006); *Gracie v. Gracie*, 157 Fed.Appx. 967, 969 (9th Cir. 2005) (affirming district court's conclusion that "Lanham Act claims and non-Lanham Act claims were inextricably intertwined such that apportionment of fees [wa]s impossible").

Fitbit cannot segregate the work counsel performed to defend against Plaintiff's Lanham Act claims from the work performed to defend against Plaintiff's non-Lanham Act claims, namely the common-law trademark infringement and unfair competition claim and Plaintiff's state-law claim for unfair competition under Cal. Bus. & Prof. Code § 17200.[7] Plaintiff based each of its Lanham Act, common law and state law claims on identical underlying allegations, and they all depended on the same core issue: likelihood of confusion. Moreover, the Court granted Fitbit's motion for summary judgment as to all of Plaintiff's claims on the same basis, precluding them on laches grounds. MSJ Order at 28. Thus, Plaintiff's claims were "so inextricably intertwined" that any attempt by Fitbit to segregate the work counsel performed by claim would be meaningless. *See POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07-2633 CAS (JWJX), 2008 WL 4351842, at *3 (C.D. Cal. Sept. 22, 2008) *aff'd,* 362 F. App'x 577 (9th Cir. 2009) (plaintiff's Lanham Act and § 17200 claims were "inextricably intertwined" where claims shared same gravamen and were based on presentation of the same evidence). Consequently, the Court should award Fitbit its fees and costs incurred in defending against all of Plaintiff's claims.

## III.   CONCLUSION

Fitbit respectfully requests that the Court grant this motion and find that Fitbit is entitled to its reasonable attorneys' fees and costs incurred in defending against Plaintiff's claims. Pursuant to the parties' stipulation and the Court's order, Fitbit is prepared to submit separate briefing and declarations supporting the amount and reasonableness of its fees and costs, including information under Civil L.R. 54-5(b)(2) and (3).

---

[7] Attorneys' fees are not generally recoverable for claims solely under the California's unfair competition law. *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1180 (2002).

FITBIT INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS     14     CASE NO. 13-cv-01418-SC

Dated: March 9, 2015     FENWICK & WEST LLP

By: /s/ *Jedediah Wakefield*
   Jedediah Wakefield

   Attorneys for Defendant and
   Counter-Claimant FITBIT, INC.