IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FITBUG LIMITED,<br><br>       Plaintiff,<br><br>   v.<br><br>FITBIT, INC.,<br><br>       Defendant. | Case No. 13-1418 SC<br><br>ORDER DENYING MOTION FOR<br>ATTORNEYS' FEES AND COSTS |

## I.   INTRODUCTION

Now before the Court is Defendant Fitbit, Inc.'s ("Fitbit") motion for attorneys' fees and costs in this trademark infringement case. ECF No. 109-1 ("Mot."). The Court previously granted summary judgment in Fitbit's favor on Plaintiff Fitbug Limited's ("Fitbug") trademark infringement claims, finding they were barred by laches. See generally ECF No. 96 ("SJ Order").

In this motion, Fitbit argues that as the prevailing party in an "exceptional case[]," it may recover reasonable attorneys' fees and costs. See 15 U.S.C. § 1117(a). Fitbug opposes, arguing that this case is ordinary and its arguments, even if not successful, were reasonable. See ECF No. 115 ("Opp'n"). The motion is fully

briefed, ECF No. 117 ("Reply"), and appropriate for resolution without oral argument under Civil Local Rule 7-1(b). For the reasons set forth below, the motion is DENIED.

**II. BACKGROUND**

This trademark infringement case involves two companies that manufacture and sell portable electronic fitness tracking devices. Fitbug, founded in 2004, was one of the first entrants into that market, and sells its devices predominantly in the United Kingdom. Fitbit was founded in March 2007, and has since developed into one of the leading providers of such devices both in the United States and abroad.

Fitbug believes that Fitbit's marketing and sale of similar devices under a similar name and logo constitutes trademark infringement. However, as the Court found in granting summary judgment in Fitbit's favor, Fitbug knew or should have known of the likelihood of confusion between the marks -- the touchstone of trademark infringement -- in 2008, when Fitbit began to market and sell (although not yet ship) its devices. Yet Fitbug did not assert its trademark rights until a cease-and-desist letter in late 2011 and, after that letter was rebuffed by Fitbit, did not file suit until March 29, 2013.

As the Court found, that delay was unreasonable and prejudiced Fitbit, thus rendering Fitbug's claims untimely under the doctrine of laches. After entering judgment in Fitbit's favor, the parties stipulated to the bifurcation of Fitbit's motion for attorneys' fees, ECF No. 107 ("Stip."), under Federal Rule of Civil Procedure 54(d)(2)(C). As a result, this motion only resolves whether Fitbit

2

is entitled to shift its fees to Fitbug, with the exact amount of fees reserved for later.

### III. LEGAL STANDARD

While the default in civil litigation in the United States is the so-called "American Rule" that each party bears its own attorneys' fees, the Lanham Act authorizes fee-shifting in "exceptional cases . . . ." 15 U.S.C. § 1117(a); see also Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014).

"An action may be considered exceptional '[w]hen a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith.'" See Secalt S.A. v. Wuxi Shenxi Const. Mach. Co., 668 F.3d 677, 687 (9th Cir. 2012) (quoting Stephen W. Boney, Inc. v. Boney Servs., 127 F.3d 821, 827 (9th Cir. 1997)); see also Octane Fitness, 134 S. Ct. at 1757 ("[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from [typical] cases to warrant a fee award.") (citing Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521, 526 (D.C. Cir. 1985)). As the Supreme Court recently put it in the patent context, an "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, 134 S. Ct at 1756; see also Georgia-Pacific Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015) (applying this standard to Lanham Act claims); Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 315 (3d

Cir. 2014) (same).

Thus, the Court must review the parties' litigating positions and the totality of the circumstances in deciding whether this case is exceptional. See Octane Fitness, 134 S. Ct. at 1756.

**IV. DISCUSSION**

Fitbit believes this case is exceptional because Fitbug knew or should have known that laches barred its claims prior to filing suit, lacked factual and legal support in arguing against laches, and pursued its claims unreasonably, specifically by seeking legally and factually unsupported damages.  Fitbug disagrees, arguing that its assessment of the laches defense and its damages claims were reasonable, and as a result concludes this case is unexceptional.

The Court will address the laches defense first, before turning to Fitbug's damages theories.  Because the Court finds the case is unexceptional, there is no need to address Fitbit's final argument regarding its entitlement to fees for its defense against Fitbug's state and common-law claims.

**A.   Laches**

As the Court found in its summary judgment order, Fitbug's claims are barred by laches.  "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights," and is a defense both to Lanham Act claims and state and common-law claims.  See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002) (internal citations and quotation marks omitted); see also Saul Zaentz Co. v. Wozniak

Travel, Inc., 627 F. Supp. 2d 1096, 1109 (N.D. Cal. 2008). A claim is barred by laches if the defendant can show "(1) unreasonable delay by plaintiff in bringing suit, and (2) prejudice . . . ." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 997 (9th Cir. 2006) (citing Couveau v. Am. Airlines, Inc., 218 F.3d 1078 (9th Cir. 2000)).

While the Court found in Fitbit's favor as to both of these prongs, concluding that the laches period began to run in September 2008, the application of laches here was not so clear-cut as to make Fitbug's position unreasonable or this case exceptional. After all, in determining whether the length of the delay was unreasonable, courts look to the most analogous statute of limitations period under state law. See Jarrow, 304 F.3d at 837. While the Court doubts the validity of the cases applying the four-year limitation periods in California Code of Civil Procedure Sections 337 and 343, it is true that up to this point, the Ninth Circuit and district courts in California have almost universally assumed that four years is the relevant period. See SJ Order at 13-14 (collecting cases); see also Mission Imports, Inc. v. Super. Ct., 31 Cal. 3d 921, 931 (Cal. 1982) (stating that "action[s] for trademark infringement sound[] in tort"); High Country Linens, Inc. v. Block, No. C 01-02180 CRB, 2002 WL 1998272, at *2 (N.D. Cal. Aug. 20, 2002) (applying the two-year period for tort claims in California Code of Civil Procedure Section 339 based on Mission Imports). Thus, Fitbug could have reasonably concluded its claims would be presumptively timely so long as it delayed no more than four years.

Again, while the Court found that Fitbug delayed more than

5

four years, Fitbug could have reasonably concluded its delay was less than four years. The date on which the Court found Fitbug "knew or should have known" of the likelihood of confusion between its mark and Fitbit's was September 2008, when Fitbit announced its products to substantial attention both in the media and at Fitbug. However, that was the earliest date from which the Court could have measured the laches period. In other words, Fitbug's claims would have been presumptively timely (at least under the four-year period it believes applies) had the Court accepted any other potential start date for laches. And Fitbug had at least a colorable argument that the laches period should have started only roughly a year later, when Fitbit first shipped its allegedly infringing goods. Although Fitbug was unreasonable in relying on a case holding that laches is measured from "the date that defendant began significantly impacting plaintiff's goodwill and business reputation," see National Consumer Engineering, Inc. v. Lockheed Martin Corp., No. CV 96-8938 DDP, 1997 WL 363970, at *6 (C.D. Cal. Feb. 14, 1997), as that language is inconsistent with subsequent Ninth Circuit precedent, see Jarrow, 304 F.3d at 838 (holding that the court must assess the length of delay from the time plaintiff "knew or should have known about its potential cause of action"), Fitbug is correct that it was entitled to wait until it "had a provable infringement claim against [Fitbit]." See Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n, 465 F.3d 1102, 1108 (9th Cir. 2006).

    A provable infringement claim requires a showing of likelihood of confusion, which is assessed through the factors laid out in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). In

6

granting summary judgment, the Court found that Fitbug had a provable infringement claim in September 2008 despite the absence of evidence on two factors -- the "proximity of the goods" and "evidence of actual confusion" -- before Fitbit shipped its allegedly infringing devices in September 2009. Id. at 348. Despite that finding, the lack of evidence on those factors certainly supports Fitbug's view it did not have a provable infringement claim until September 2009. See Tillamook, 465 F.3d at 1108. Coupling this with the assumption that the most analogous state law cause of action under California law has a four-year statute of limitations, Fitbug's decision to bring suit in March of 2013 was not legally or factually unreasonable, frivolous, or otherwise "exceptional." See 15 U.S.C. § 1117(a); see also Octane Fitness, 134 S. Ct at 1756 & n.6.

### B. Damages Theories

Second, Fitbit contends that Fitbug's damages theories were legally baseless. Specifically, Fitbit takes issue with Fitbug's demand for disgorgement of Fitbit's profits and its efforts to obtain "lost royalties." Mot. at 9. While Fitbit points out Fitbug eventually dropped these contentions, Fitbug did so just twenty days before trial, after Fitbit allegedly incurred significant expense defending against them.

#### 1. Fitbug's Disgorgement Theory

Fitbug sought disgorgement of Fitbit's profits as damages. An alleged infringer's profits are recoverable in trademark cases on a disgorgement/unjust enrichment theory or as proxy for actual damages under 15 U.S.C. Section 1117(a)(2). See Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1405-09 (9th Cir. 1993); Spin

1  Master, Ltd. v. Zobmondo Entm't, 944 F. Supp. 2d 830, 839-49 (C.D.
2  Cal. 2012).  While Fitbug points to cases suggesting that
3  willfulness may not be required to recover an alleged infringer's
4  profits as a proxy for actual damages, a disgorgement theory
5  clearly requires willfulness.  See Adray v. Adry-Mart, Inc., 76
6  F.3d 984, 988 (9th Cir. 1995). Moreover, a showing of intent to
7  "'exploit the advantage of an established mark'" and "'gain the
8  value of an established name of another'" is similarly necessary
9  for disgorgement of profits.  Id. at 849 (quoting Lindy Pen, 982
10 F.2d at 1405-06).

11     As the Court found in granting summary judgment, "Fitbit has
12 offered no evidence demonstrating that Fitbit employed the
13 allegedly infringing mark with the wrongful intent of capitalizing
14 on its goodwill."  SJ Order at 27 (internal quotation marks
15 omitted) (quoting RSI Corp. v. IBM Corp., No. 5:08-CV-3414-RMW,
16 2012 WL 3277136, at *20 (N.D. Cal. Aug. 9, 2012)).  In the absence
17 of evidence of trading off Fitbug's goodwill, disgorgement would
18 "amount to a penalty to [Fitbit] and a windfall to [Fitbug], who
19 has only a 'relatively obscure name' to appropriate, even if
20 [Fitbit's] infringement was otherwise intentional."  See Spin
21 Master, 944 F. Supp. 2d at 848-49.

22     If Fitbug had asserted this theory from the start (and thus
23 without the benefit of discovery), the Court might be reticent to
24 conclude the assertion of this theory was unreasonable.  This is
25 particularly true given that Fitbug dropped this theory prior to
26 trial, likely in recognition of the absence of evidence of any
27 willfulness or intent to trade on Fitbug's name.  However, Fitbug
28 did not identify this theory until it supplemented its initial

disclosures in August 2014 -- just before the close of fact discovery and after the action was pending for well over a year. ECF No. 111-1 ("Wakefield Decl.") at Ex. 2.  As a result, the Court finds Fitbug's decision to seek disgorgement of Fitbit's profits lacked an objectively reasonable factual or legal basis.[1]  See Octane Fitness, 134 S. Ct. at 1756 & n.6 (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)).

### 2. Lost Royalties

Second, Fitbit argues that Fitbug's claim for lost royalty damages was unreasonable.

Lost royalties are a permissible form of damages for trademark infringement akin to lost profits, and must be proven with reasonable certainty.  See QS Wholesale, Inc. v. World Mktg., Inc., No. SA 12-cv-0451(RNBx), 2013 WL 1953719, at *4 (C.D. Cal. May 9, 2013).  "Because of the 'reasonable certainty' requirement, reasonable royalties are most often granted in a trademark context where the parties had a prior licensing arrangement, or where the

---

[1] Fitbit also points to Fitbug's "forward confusion" theory and arguments about the famousness of its mark as further supporting its belief that the claims for Fitbit's profits were unsupported and unreasonable.  While the Court agrees that the forward confusion theory was unlikely to succeed on the merits, Fitbug's argument had factual and legal support.  See Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 87 F.3d 654, 660-61 (4th Cir. 1996) (noting that evidence of actual consumer confusion is the best evidence of likelihood of confusion); ECF No. 49 ("Rosenberg Decl.) Ex. 8 (summarizing customer queries to Fitbit regarding Fitbug devices); but see Reply at 11 (pointing out the factual evidence of actual confusion, summaries of communications between Fitbit and its customers, were potentially inadmissible) (citing Fed. R. Evid. 602, 802).  Setting aside this evidentiary dispute, which the Court need not resolve, even if Fitbug's forward confusion theory was weak, the Court finds that in light of the factual and legal support for the theory, asserting a forward confusion theory was neither frivolous nor objectively unreasonable.  See Octane Fitness, 134 S. Ct. at 1756 n.6.

plaintiff previously had engaged in the practice of licensing the mark to a third party . . . ." Id. (internal citations omitted).

Here, as Fitbit notes, the parties did not have an existing or prior licensing arrangement and Fitbug does not have a history of licensing its mark. However, Fitbug points to at least one case allowing a reasonable royalty theory to proceed despite the absence of a prior licensing history between the parties or between the plaintiff and a third party. See ITT Corp. v. Xylem Grp., LLC, 963 F. Supp. 2d 1309, 1330 (N.D. Ga. 2013). As a result, even if this theory of damages was unlikely to succeed, the Court finds it was not "groundless, unreasonable, vexatious, . . . pursued in bad faith," or otherwise objectively unreasonable. See Octane Fitness, 134 S. Ct. at 1756, n.6; Secalt, 668 F.3d at 687 (internal quotation marks omitted).

## V.     CONCLUSION

Awarding attorneys' fees under 15 U.S.C. Section 1117(a) is discretionary. See Rolex Watch, U.S.A., Inc. v. Michel Co., 179 F.3d 704, 711 (9th Cir. 1999). In the exercise of that discretion, the Court finds that while Fitbit's laches defense was relatively strong and Fitbug's claims for Fitbit's profits were legally and factually unreasonable, considering "the totality of the circumstances," this case neither "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated," Octane Fitness, 134 S. Ct. at 1756, nor was it "groundless, unreasonable, vexatious, or pursued in bad faith." See Secalt, 668 F.3d at 687 (internal quotation marks omitted).

Accordingly, Fitbit's motion for attorneys' fees is DENIED.

Dated: June 5, 2015

_____
UNITED STATES DISTRICT JUDGE